IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ERICA ANN MILLER,            )
                             )
    Plaintiff,                )
                             )
        vs.                   )   Civil Action No. 10-1353
                             )
MICHAEL J. ASTRUE,           )
Commissioner of Social Security, )
                             )
    Defendant.                )

**MEMORANDUM OPINION**

I.  **INTRODUCTION**

Pending before the Court are cross-motions for summary judgment filed by Plaintiff Erica Ann Miller and Defendant Michael J. Astrue, Commissioner of Social Security. Plaintiff seeks review of a final decision by the Commissioner denying her claim for supplemental security income benefits ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.* For the reasons discussed below, Defendant's motion is granted and Plaintiff's motion is denied.

II. **BACKGROUND**

   A.  Factual Background

Erica Ann Miller was born on March 16, 1988. (Certified Copy of Transcript of Proceedings before the Social Security Administration, Docket No. 5, "Tr.," at 276.) Shortly after her eighth birthday, while she was still in first grade, Ms. Miller was

1

referred for a multidisciplinary evaluation by the Instructional Support Team at her elementary school because she was having difficulty recognizing letters and had poor letter/sound association, auditory and visual discrimination, sight vocabulary, and ability to track words. (Id.) After undergoing an extensive battery of intelligence, individual achievement, and developmental tests, it was determined that her overall intellectual ability fell within the borderline range. Her achievement levels in basic reading, spelling, numerical operations, and listening comprehension were within the expected range, but her mathematical skills, reading comprehension, and writing were below expected levels. As a result of the evaluation, it was recommended that Ms. Miller receive individualized learning support.

Throughout her school career, Ms. Miller had regular learning support in her communications, math, science and social studies classes and special assistance in making the transition from school to employment. (Tr. 227.) She also took business information technology classes at a vocational-technical high school. (Tr. 215.)

In April 2007, when she was a senior, Ms. Miller underwent further testing as part of a plan administered through the Office of Vocational Rehabilitation. (Tr. 395.) The tests administered at that time reflected borderline intelligence, exceptionally weak

2

reading and spelling skills, but average arithmetic ability. (Tr. 398.) Her visual processing skills were superior to her auditory processing abilities, but she also demonstrated inconsistencies in her performance efforts. (Tr. 400.)

While in high school, Ms. Miller participated in a work-study program, assisting in the school cafeteria. The instructor described her as "doing a wonderful job," and commented on her high motivation, good peer relationships, satisfactory attendance, and her patience with other students. (Tr. 229.) Ms. Miller graduated from high school in 2009, and held two short-term jobs as a sandwich-maker for a grocery store and as a light custodian. Neither of these jobs lasted more than a few weeks because, as Ms. Miller later explained, "I couldn't handle it. I got fired because I wasn't able to keep up with the pace of work." (Tr. 234.)

In addition to her learning disability, Ms. Miller received mental health treatment for several years after she was diagnosed with bipolar disorder while in middle school. During the period September 2002 through at least October 2009, Ms. Miller received regular psychiatric counseling and medication through Cornerstone Care and Greene County Mental Health Services. (Tr. 300-363; 402-422; 425-447; 521-555.)

Plaintiff sprained her ankle in 2004 while playing volleyball in school and throughout the next few years, she continued to have

problems with it, as well as with chronic knee pain for which she received an evaluation and short-term treatment. After graduating, she injured her left ankle, but again received no long-term treatment for this problem.

B. Procedural Background

On January 15, 2008, Ms. Miller filed an application for supplemental security income benefits, alleging disability as of June 1, 2005, due to bipolar disorder and a learning disability.[1] (Tr. 150-153; 233-239.) The Social Security Administration ("SSA") denied Ms. Miller's application, reasoning that although she had no significant past work experience, there were numerous unskilled jobs she could perform despite her limitations. (Tr. 62-63.)

Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ'"), which was held on October 7, 2009, before Judge George A. Mills III, in Morgantown, West Virginia. Ms. Miller, who was assisted by a non-attorney, Barbara S. Mann, testified as did a vocational expert, Timothy Mahler. (Tr. 25-59.) Judge Mills issued his decision on November 10, 2009, again denying benefits. (Tr. 8-24.) On August 25, 2010, the Social Security Appeals Council advised Ms. Miller that it had chosen not to review the ALJ's decision, finding no reason under its rules to do so. (Tr. 1-5.) Therefore,

---

[1] Plaintiff had previously applied for benefits as a minor, but when denied by the Social Security Administration, she apparently did not pursue an appeal before an Administrative Law Judge. (Tr. 60-61; 30-31.)

4

the November 10, 2009 opinion became the final decision of the Commissioner for purposes of review. 42 U.S.C. § 405(h); Rutherford v. Barnhart, 399 F.3d 546, 549-550 (3d Cir. 2005), *citing* Sims v. Apfel, 530 U.S. 103, 107 (2000). On October 14, 2010, Plaintiff filed suit in this Court seeking judicial review of the ALJ's decision.

### C. Jurisdiction

This Court has jurisdiction by virtue of 42 U.S.C. § 1383(c)(3) (incorporating 42 U.S.C. § 405(g)) which provides that an individual may obtain judicial review of any final decision of the Commissioner by bringing a civil action in the district court of the United States for the judicial district in which the plaintiff resides.

## III. STANDARD OF REVIEW

The scope of review by this Court is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389 (1971); Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999). Findings of fact by the Commissioner are considered conclusive if they are supported by "substantial evidence," a standard which has been described as requiring more than a "mere scintilla" of evidence, that is, equivalent to "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." Richardson, id. at 401. "A single piece of evidence will not satisfy the substantiality test if the [ALJ] ignores, or fails to resolve a conflict, created by countervailing evidence." Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983).

This Court does not undertake *de novo* review of the decision and does not re-weigh the evidence presented to the Commissioner. Schoengarth v. Barnhart, 416 F. Supp.2d 260, 265 (D. Del. 2006), *citing* Monsour Medical Center v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986) (the substantial evidence standard is deferential, including deference to inferences drawn from the facts if they, in turn, are supported by substantial evidence.) If the decision is supported by substantial evidence, the Court must affirm the decision, even if the record contains evidence which would support a contrary conclusion. Panetis v. Barnhart, No. 03-3416, 2004 U.S. App. LEXIS 8159, *3 (3d Cir. Apr. 26, 2004), *citing* Simmonds v. Heckler, 807 F.2d 54, 58 (3d Cir. 1986), and Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000).

**IV. ANALYSIS**

    A. <u>The ALJ's Determination</u>

In determining whether a claimant is eligible for supplemental security income, the burden is on the claimant to show that she has a medically determinable physical or mental impairment

(or combination of such impairments) which is so severe she is unable to pursue substantial gainful employment[2] currently existing in the national economy. The impairment must be one which is expected to result in death or to have lasted or be expected to last not less than twelve months. 42 U.S.C. § 1382c(a)(3); Morales v. Apfel, 225 F.3d 310, 315-316 (3d Cir. 2000). She must also show that her income and financial resources are below a pre-determined level. 42 U.S.C. § 1382(a). The Commissioner does not dispute that Ms. Miller satisfied the non-medical requirements for receiving SSI.

To determine a claimant's rights to SSI,[3] the ALJ conducts a formal five-step evaluation:

(1) if the claimant is working or doing substantial gainful activity, she cannot be considered disabled;

(2) if the claimant does not suffer from a severe impairment or combination of impairments that significantly limits her ability to do basic work activity, she is not disabled;

(3) if the claimant does suffer from a severe impairment which meets or equals criteria for an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") and the condition has lasted or is expected to last continually for at least twelve months, the claimant is considered disabled;

(4) if the claimant retains sufficient residual functional

---

[2] According to 20 C.F.R. § 416.972, substantial employment is defined as "work activity that involves doing significant physical or mental activities." "Gainful work activity" is the kind of work activity usually done for pay or profit.

[3] The same test is used to determine disability for purposes of receiving either SSI or disability income benefits. Burns v. Barnhart, 312 F.3d 113, 119, n.1 (3d Cir. 2002). Therefore, courts routinely consider case law developed under both programs.

capacity ("RFC")[4] to perform her past relevant work, she is not disabled; and

(5) if, taking into account the claimant's RFC, age, education, and past work experience, the claimant can perform other work that exists in the local, regional or national economy, she is not disabled.

20 C.F.R. § 416.920(a)(4); *see also* Morales, 225 F.3d at 316.

In steps one, two, and four, the burden is on the claimant to present evidence to support her position that she is entitled to Social Security benefits, while in the fifth step the burden shifts to the Commissioner to show that the claimant is capable of performing work which is available in the national economy.[5] Sykes v. Apfel, 228 F.3d 259, 263 (3d Cir. 2000).

Following the prescribed analysis, Judge Mills first concluded Ms. Miller had not engaged in substantial gainful activity since the date of her application, January 15, 2008. Although she had worked part time preparing sandwiches in a grocery store delicatessen for about a month in 2008, the ALJ determined that this work did not rise to the level of substantial gainful activity. (Tr. 13.) In resolving step two, the ALJ found that as of the date of the hearing,

---

[4] Briefly stated, residual functional capacity is the most a claimant can do despite her recognized limitations. Social Security Ruling 96-9p defines RFC as "the individual's maximum remaining ability to perform work on a regular and continuing basis, i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule."

[5] Step three involves a conclusive presumption based on the listings, therefore, neither party bears the burden of proof at that stage. Sykes, 228 F.3d at 263, n.2, *citing* Bowen v. Yuckert, 482 U.S. 137, 146-147 n.5 (1987).

8

Ms. Miller suffered from the following severe impairments: right ankle problems; obesity; bipolar disorder, mixed, with explosive episodes and mood disorder; borderline intellectual functioning; and learning disability. (Id.) At step three, the ALJ concluded none of Plaintiff's impairments, considered singly or in combination, satisfied the criteria of any relevant Listing. That is, Plaintiff's right ankle problems did not meet any of the criteria for Listing 1.00 (musculoskeletal disorders) and her obesity had not caused any other affected body system to meet or medically equal the criteria of another Listing. Ms. Miller's bipolar disorder and generalized anxiety were not sufficiently severe to meet the criteria of Listing 12.04 (affective disorders) and Listing 12.06 (anxiety disorders.) Finally, the limitations imposed by her learning disability and borderline intellectual functioning did not satisfy the requirements of Listing 12.05 (mental retardation.) (Tr. 15-17.)

At step four, the ALJ concluded Plaintiff retained the residual functional capacity to perform medium work[6] and had additional non-exertional limitations, that is, she was limited to "simple, unskilled work" which did not require "more than occasional contact

---

[6] Social Security Regulations define medium work as work involving lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds, and the ability to stand and/or walk six hours in an eight-hour workday. A person who is capable of medium work is assumed to be able to perform at the light and sedentary levels as well. 20 C.F.R. § 416.967(c).

9

with supervisors and co-workers. . .any contact with the general public; and completion of rapid production quotas." (Tr. 17.) Based on Plaintiff's age,[7] high school education, and residual functional capacity, the ALJ concluded other jobs existed in significant numbers in the economy which Plaintiff could perform despite her limitations. In reaching this conclusion, the ALJ relied on the testimony of Mr. Mahler, the Vocational Expert, who identified the unskilled occupations of janitor, vehicle washer, and hand packer at the medium level; laundry folder, office cleaner, and hand packer at the light level; and glass products waxer, inspector/checker, and sorter at the sedentary level. (Tr. 19, see also Tr. 53-54.) Thus, the ALJ concluded Ms. Miller had not been under a disability between January 15, 2008, and the date of his decision and, consequently, was not entitled to benefits. (Tr. 19.)

B. Plaintiff's Arguments

Ms. Miller raises only a single argument in her brief in support of the motion for summary judgment, that is, the ALJ erred in finding that she did not meet the criteria of Listing 12.05C. (Doc. No. 10.) According to Ms. Miller, her previous score of 70 on the Wechsler Intelligence Scale for Children-Third Edition satisfies the first prong of the Listing; the fact that the ALJ

---

[7] Ms. Miller was 19 years old as of the date of her application for benefits, making her a "younger individual age 18-49," according to Social Security Regulations. 20 C.F.R. § 416.963.

identified several other "severe" impairments at Step 2 of his analysis satisfies the second prong; and the valid IQ between 60 and 70 was manifested before she turned 22 years of age, thereby satisfying the third prong.

We conclude that Plaintiff's analysis is fatally flawed inasmuch as the only score which satisfies the first prong of Listing 12.05C dates from a period which the ALJ correctly did not consider. We therefore need not address Plaintiff's arguments on the second and third prongs.

C. Analysis

1. *Listing 12.05C*: Listing 12.05 begins with an introductory paragraph setting forth the diagnostic description for mental retardation. According to this so-called "capsule definition," mental retardation refers to "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. pt. 404, subpt. P, App. 1, § 12.05. The Listing also contains four sets of criteria, A through D; if the claimant's level of mental retardation satisfies any one of those four sets, the ALJ should conclude at Step 3 that the impairment satisfies the Listing.[8] As succinctly stated by the United States

---

[8] The ALJ also appropriately identified the criteria for Listings 12.05A,

Court of Appeals for the Third Circuit, a claimant satisfies the three-prong test of Listing 12.05C when he shows she "i) [has] a valid verbal, performance or full scale IQ of 60 through 70, ii) [has] a physical or other mental impairment imposing additional and significant work-related limitations of function, and iii) [can] show the mental retardation was initially manifested during the developmental period (before age 22)." Markle v. Barnhart, 324 F.3d 182, 187 (3d Cir. 2003).

Social Security regulations further provide that when, as in this case, "more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full IQs are provided in the Wechsler series, [the SSA will] use the lowest of these in conjunction with 12.05." Listing 12.00, ¶ D.6.c. Only one score within this range is necessary to satisfy this portion of the test. *See* Burns v. Barnhart, 312 F.3d 113, 125, n.6 (3d Cir. 2002), noting that the claimant receives the "benefit of the doubt" inasmuch as the lowest score on a multi-part IQ test is the score used in the rest of the analysis. This portion of the regulations also states that the IQ assessment should be accompanied by a narrative report which indicates "whether the IQ scores are considered valid and consistent with the [claimant's] developmental history and the degree

---

12.05B and 12.05D in his decision and concluded there was no evidence to support a finding that Ms. Miller met anyone of those three sub-sets. (Tr. 16-17.) Ms. Miller does not argue that the ALJ erred in this regard and we therefore omit any discussion of those Listings.

of functional limitation."

2. *Discussion and conclusion:* In his analysis, Judge Mills dealt with Listing 12.05C rather briefly, stating only that "the 'paragraph C' criteria of listing 12.05 are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." (Tr. 17.) Elsewhere, he noted that on April 16, 2007, Ms. Miller had undergone a psychological examination, including an intelligence test, on which she achieved a verbal IQ score of 72, a performance IQ score of 85, and a full scale IQ score of 76. (Tr. 14, citing Exh. B8F, the medical report of Mr. Scott B. Roberts, Tr. 395-401.) He did not mention the scores Ms. Miller received when she was tested on March 25, 1996, by Pauline M. Weston, a Pennsylvania-certified school psychologist (Tr. 276-280), the evidence on which Plaintiff relies for her position that her mental impairment satisfies Listing 12.05C.[9]

As noted above, Ms. Miller underwent a battery of intelligence tests on March 25, 1996, when she was just eight years old. As

---

[9] Judge Mills did not refer to the fact that Ms. Miller underwent additional testing by Dr. John Carosso on October 22, 2009 (Tr. 549-555.) Dr. Carosso administered the Wechsler Adult Intelligence Scale – Fourth Edition which revealed a verbal IQ score of 76, a perceptual reasoning score of 79, working memory score of 69, processing speed score of 92, and full scale IQ score of 76. (Tr. 549.) He found these scores indicative of borderline intelligence. (Tr. 553.) Because these scores are consistent with Mr. Roberts' results and do not support Plaintiff's argument, we find no need to discuss them further.

13

Plaintiff argues, the test revealed a verbal score of 70, a performance score of 90 and a full scale score of 77. A score in the range of 71 through 84 is indicative of borderline intelligence whereas a score of 70 and below reflects mental retardation. Mitchell v. Epps, No. 10-70006, 2011 U.S. App. LEXIS 9916, *43 (5th Cir. May 16, 2011), citing the American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 42, 740 (4th ed. 2000). If the scores from 1996 were adopted, as Plaintiff argues, she would satisfy the criteria for mental retardation based on her verbal score of 70, the lowest of the three scores.

Mr. Roberts administered the Wechsler Adult Intelligence test when Ms. Miller was 19 years old. (Tr. 395-401.) That test revealed a verbal IQ score of 72, a performance IQ score of 85 and a full scale IQ score of 76, all within or above the borderline intelligence range. Plaintiff does not question the validity of these scores[10] or otherwise object to the tests or testing methods used by Mr. Roberts.

---

[10] An ALJ may reject the results of an IQ test which are shown to be invalid. In arriving at his determination of whether an IQ score is valid, i.e., the score is "an accurate reflection of [a claimant's] intellectual capabilities," the ALJ is to consider the entire record before him. Lax v. Astrue, 489 F.3d 1080, 1087 (10th Cir. 2007); Markle, 324 F.3d at 186. Test results may be considered invalid where there is evidence that the claimant was malingering or deliberately attempting to distort the results during the test administration. *See,* e.g., Clay v. Barnhart, 417 F.3d 922, 930 (8th Cir. 2005), and Lax, 489 F.3d at 1087. Similarly, test results may be deemed invalid where the IQ scores are inconsistent with the claimant's prior educational or work history, daily activities, behavior, or other aspects of his life. *See*, e.g., Brooks v. Barnhart, No. 04-15716, 2006 U.S. App. LEXIS 3924, *4-*5 (9th Cir. Feb. 16, 2006); Clark v. Apfel, 141 F.3d 1253, 1256 (8th Cir. 1998); and Popp v. Heckler, 779 F.2d 1497, 1499 (11th Cir. 1986).

As recognized by the Social Security Administration in its discussion of intelligence testing in children, the medical community has found that test results obtained at a young age are less reliable and valid than test results obtained at an older age. Therefore, the Administration has taken the position that

> [g]enerally, the results of IQ tests tend to stabilize by the age of 16. Therefore, IQ test results obtained at age 16 or older should be viewed as a valid indication of the child's current status, provided they are compatible with the child's current behavior. IQ test results obtained between ages 7 and 16 should be considered current for 4 years when the IQ is less than 40, and for 2 years when the IQ is 40 above.

Listing 112.00D10; *see also* cases applying this rule, e.g., Larock v. Astrue, CA No. 10-1019, 2011 U.S. Dist. LEXIS 52884, *13 (N.D. N.Y. Apr. 29, 2011); Lewis v. Astrue, CA No. 09-482, 2010 U.S. Dist. LEXIS 45351, *39 (E.D. Ark. Apr. 15, 2010); Gutierrez v. Astrue, CA No. 08-394, 2009 U.S. Dist. LEXIS 112703, *13 (E.D. Wash. Dec. 4, 2009); Williams v. Apfel, CA No. 97-5551, 1998 U.S. Dist. LEXIS 19281, *12-*13 (N.D. Ill. Dec. 4, 1998); *but see* Williams v. Astrue, CA No. 07-1649, 2009 U.S. Dist. LEXIS 5786, *22-*23 (E.D. Mo. Jan. 28, 2009) (holding that the ALJ erred where he did not question the validity of IQ scores from testing administered when a claimant was 12 years old and did not consider those scores when determining that the adult claimant did not satisfy Listing 12.05C because that Listing does not contain a "currency requirement.")

Therefore, as Defendant argues, the test scores from 1996 were

considered only valid for 2 years, that is, until 1998, well before Plaintiff's application for benefits filed in 2008. (Defendant's Brief in Support of His Motion for Summary Judgment, Doc. No. 12, at 15-17.) Although the ALJ's decision might have been more complete had he mentioned these outdated scores and explained why he was rejecting them, we do not find these omissions grounds to remand for further consideration. See Rutherford, 399 F.3d at 553 (where the ALJ failed to mention part of the record but reconsideration of that omission would not affect the outcome of the case, remand was not required.)

Plaintiff's motion for summary judgment is denied. An appropriate Order follows.

June  28 , 2011                     /s/ William L. Standish
                                    William L. Standish
                                    United States District Judge

16